**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |
|---|---|
| TANISHA RANDLE, | HONORABLE KAREN M. WILLIAMS |
| *Individually and as Administrator Ad Prosequendum of Decedent, Michael Thomas, et al.*, | Civil Action |
| Plaintiffs, | No. 21-1073 (KMW-AMD) |
| v. |  |
| TOWNSHIP OF PENNSAUKEN, *et al.*, | **OPINION** |
| Defendants. |  |

**Nixon Teah Kannah, Esquire**
5015 Germantown Avenue
Philadelphia, PA 19144
*Counsel for Tanisha Randle, Individually and as Administrator Ad Prosequendum of Decedent, Michael Thomas, and Estate of Michael Thomas Jr*

**J. Brooks DiDonato, Esquire**
Parker, McCay
9000 Midlantic Drive
Suite 300
PO Box 5054
Mount Laurel, NJ 08054
*Counsel for Township of Pennsauken, Township of Pennsauken Police Department, John Nettleton, and Timothy Mireles*

**Andrew S. Brown, Esquire**
**William F. Cook, Esquire**
**William M. Tambussi, Esquire**
Brown & Connery, LLP
360 Haddon Avenue
PO Box 539
Westmont, NJ 08108
*Counsel for County of Camden, Scott Thomson,[1] and Camden County Police Department*

---

[1] Scott Thomson is incorrectly identified as "Scott Thompson" in the Complaint. *See* Camden Defs.' Br. at 1.

**WILLIAMS, District Judge:**

## I.   INTRODUCTION

This case arises out of the discovery of the body of Plaintiff Tanisha Randle's[2] son, Michael Thomas ("Thomas"), in a river dam. On January 22, 2019, Defendant Timothy Mireles ("Mireles"), a police officer from the Pennsauken Police Department, initiated a police pursuit of Thomas after observing Thomas driving his vehicle at a high rate of speed, failing to yield to a stop sign, and disregarded Mireles' emergency alerts for Thomas to pull over. When Thomas crashed his vehicle and ignored Mireles' commands to stop fleeing, he ran into a wooded area near a river embankment. Police officers searched the area where Thomas was last seen but were not successful in locating him. Approximately four months later, Thomas' body was found.

Randle, individually and as administrator *ad prosequendum* of Thomas, and the Estate of Michael Thomas Jr (collectively, the "Plaintiffs") bring this action alleging claims premised on failure to supervise and/or train under 42 U.S.C. § 1983 against the County of Camden; Camden County Police Department; Scott Thomson, former Chief of Camden Police, in his individual and official capacity (collectively, the "Camden Defendants") and the Township of Pennsauken; Township of Pennsauken Police Department; John Nettleton, Chief of Pennsauken Police, in his individual and official capacity; and Timothy Mireles, in his individual and official capacity (collectively, the "Pennsauken Defendants"). Presently before the Court are Motions for Summary Judgment filed by the Camden Defendants and the Pennsauken Defendants (collectively, the

---

[2] The Complaint incorrectly identifies Tanisha Randall as "Tanisha Randle." *See* Camden Defs.' Br. at 1. To avoid confusion, the Court will use "Randle."

"Defendants") pursuant to Federal Rule of Civil Procedure 56.[3] Plaintiffs have not opposed the Motions. For the reasons that follow, the Motions filed by Defendants are granted.

## II.    FACTUAL BACKGROUND

The facts giving rise to this lawsuit are fairly straight forward. In the early morning hours of January 22, 2019, Mireles was on patrol in the area of Marlton Pike and Woodland Avenue in Pennsauken when he observed a 2002 silver Buick sedan driven by who was later identified as Thomas. *See* Camden Defs.' Statement of Material Facts ("Camden Defs.' SMF") ¶ 1; Pennsauken Defs.' Statement of Material Facts ("Pennsauken Defs.' SMF") ¶¶ 1, 3. According to Mireles, Thomas was driving the vehicle at a high rate of speed, nearly colliding with several parked cars, and failed to yield at a stop sign. Camden Defs.' SMF ¶¶ 2-3; Pennsauken Defs.' SMF ¶ 2. Mireles attempted to stop the vehicle by activating his emergency lights and siren to alert Thomas to pull over. Camden Defs.' SMF ¶¶ 3-4; Pennsauken Defs.' SMF ¶¶ 3-4.

Thomas failed to yield to Mireles' siren and instead accelerated thereby prompting Mireles to notify central dispatch that the vehicle was attempting to flee from police. Camden Defs.' SMF ¶ 5; Pennsauken Defs.' SMF ¶¶ 5-6. Thereafter, Mireles began his pursuit of the vehicle. Camden Defs.' SMF ¶ 5; Pennsauken Defs.' SMF ¶ 6. Thomas lost control of the vehicle and crashed into a concrete traffic barrier on Route 30 just outside of Camden. Camden Defs.' SMF ¶ 7; Pennsauken Defs.' SMF ¶ 8. As Thomas exited the vehicle, Mireles commanded him to stop and advised him that he was under arrest. Camden Defs.' SMF ¶ 8; Pennsauken Defs.' SMF ¶¶ 9-10. Thomas

---

[3] The Court notes the instant Motions were filed pursuant to a dispositive motion deadline in a scheduling order issued by the Honorable Ann Marie Donio, U.S.M.J. ECF No. 63. In that scheduling order, Judge Donio extended the deadline for pretrial factual discovery at the request of Plaintiffs. ECF Nos. 62, 63. This extension was the second of multiple extensions requested in this case. ECF Nos. 44, 52, 61. Crucially, despite being given several opportunities to conduct discovery, Plaintiffs did not conduct any depositions or serve any expert reports. Pennsauken Defs.' Statement of Material Facts ("Pennsauken Defs.' SMF") ¶ 58.

ignored Mireles' commands, jumped the concrete barrier, and ran into a wooded area parallel to the 11th Street Bridge in Camden. Camden Defs.' SMF ¶¶ 8-9; Pennsauken Defs.' SMF ¶¶ 10-12; Camden Defs.' Br. at Ex. D. Mireles chased Thomas through the woods but lost sight of him near a river embankment. Camden Defs.' SMF ¶¶ 9-10; Pennsauken Defs.' SMF ¶¶ 12-13. Although Mireles lost sight of Thomas, he nevertheless requested assistance and at least ten police officers from Camden Police and Pennsauken Police performed a perimeter search of the area where Mireles last saw Thomas. Camden Defs.' SMF ¶¶ 11-12; Pennsauken Defs.' SMF ¶¶ 13-14; Camden Defs' Br. at Ex. G; Pennsauken Defs' Br. at Ex. L. The officers were unable to locate Thomas[4] and it was determined that he had eluded arrest. Camden Defs.' SMF ¶ 13; Pennsauken Defs.' SMF ¶ 14. The vehicle Thomas was driving was later identified as that of Thomas' girlfriend, who had shared in an interview with police that Thomas borrowed her car. Camden Defs.' SMF ¶ 14; Pennsauken Defs.' SMF ¶ 15. Two days later, on January 24, 2019, Randle met with an officer of Camden Police and advised him she wished to report Thomas missing; although she changed her mind about filing a missing persons report, Camden Police updated their website to list Thomas as a missing person. Camden Defs.' SMF ¶¶ 18-19; Camden Defs' Br. at Ex. F.

Sadly, on May 14, 2019, almost four months after the pursuit and search, Thomas' body was found with an ankle monitor on a fish ladder in the Cooper River dam.[5] Camden Defs.' SMF ¶ 20; Pennsauken Defs.' SMF ¶¶ 18-20. The State of New Jersey's Pretrial Probation Office determined that the battery in the ankle bracelet had last been changed at approximately 1:00 a.m. on January 22, 2019, and at 3:00 a.m. there was a loss of signal likely representing a loss of power

---

[4] It is unclear from the record exactly how long the police officers searched for Thomas. Camden Defs.' SMF ¶ 13; Pennsauken Defs.' SMF ¶ 14.

[5] It is unclear from the record how far this location is from where the search for Thomas took place.

4

to the unit. Pennsauken Defs.' SMF ¶ 21; Pennsauken Defs.' Br. at Ex. J. The Gloucester County Medical Examiner performed an autopsy on Thomas' body and opined that Thomas' death was accidental and that he died of methamphetamine and buprenorphine intoxication. Camden Defs.' SMF ¶¶ 21-23; Pennsauken Defs.' SMF ¶ 21; Pennsauken Defs.' Br. at Ex. F.

On January 22, 2021, Plaintiffs brought this action against Defendants. The Camden Defendants moved to dismiss Plaintiffs' state law tort claims under Counts One, Three, and Four of the Complaint or in the alternative for summary judgment. ECF No. 20. The Pennsauken Defendants moved for partial summary judgment on the same state law tort claims. ECF No. 24. In a May 25, 2022 Order, the Court granted the dismissal of Plaintiffs' state law tort claims with prejudice on the basis that Plaintiffs failed to file a timely notice of claim under the New Jersey Tort Claims Act. ECF No. 49. Following entry of that Order, Plaintiffs did not file an amended complaint. Thus, the only remaining claim against Defendants is premised on failure to supervise and/or train under 42 U.S.C. § 1983.

On February 24, 2022, Randle was deposed and testified that she did not know how or when Thomas entered the water, what caused his death, or whether Thomas ended up in the water that morning when he was pursued by police. Camden Defs.' SMF ¶ 25; Pennsauken Defs.' SMF ¶¶ 29-32. When asked what officers from Camden Police and Pennsauken Police did wrong, Randle testified that they should have searched the water for Thomas and knocked on the doors of family to locate him. Camden Defs.' SMF ¶ 27; Camden Defs.' Br. at Ex. F; Pennsauken Defs.' Br. at Ex. K.

### III.    STANDARD OF REVIEW

Where, as here, a motion for summary judgment is unopposed, Fed. R. Civ. P. 56(e)(3) "still requires the Court to satisfy itself that summary judgment is proper because there are no genuine disputes of material fact and the movant is entitled to judgment as a matter of law." *Ruth v. Selective Ins. Co. of Am.*, No. 15-2616, 2017 WL 592146, at *2 (D.N.J. Feb. 14, 2017); *see also Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir. 1990) (failure to respond to a summary judgment motion "is not alone a sufficient basis for the entry of a summary judgment"). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. *Id.*

In considering a summary judgment motion, the district court "may not make credibility determinations or engage in any weighing of the evidence." *Montone v. City of Jersey City*, 709 F.3d 181, 191 (3d Cir. 2013). The moving party has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). While the nonmoving party is entitled to the benefit of all justifiable inferences from the evidence, it "may not, in the face of a showing of a lack of a genuine issue, withstand summary judgment by resting on mere allegations or denials in the pleadings." *U.S. v. Premises Known as 717 S. Woodward St., Allentown, Pa.*, 2 F.3d 529, 533 (3d Cir. 1993). The nonmoving party "must set forth 'specific facts showing that there is a genuine issue for trial,' else summary judgment, 'if appropriate,' will be entered." *Id.* (quoting Fed. R. Civ. P. 56(e)). Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a

showing sufficient to establish the existence of an element essential to that party's case." *Celotex*, 477 U.S. at 322.

For an unopposed motion, a movant who files a proper Local Civil Rule 56.1 statement of undisputed material facts "receives the benefit of the assumption that such facts are admitted for purposes of the summary judgment motion." *Ruth*, 2017 WL 592146, at *3. Accordingly, where an unopposed summary judgment motion is properly filed and supported, "it would be an exceptional case where the court concludes that summary judgment should nonetheless be denied or withheld." *Id.*

Here, the statements of material facts submitted by Defendants, as to which Plaintiffs have filed no objection or counterstatement, are deemed undisputed for the purpose of these summary judgment motions. Moreover, while Plaintiffs do not oppose the Motions, the Court may not glean as facts allegations made in the Complaint. Thus, because the only evidence from Plaintiffs is the February 24, 2022 deposition of Randle, the Court is constrained to consider only Randle's testimony when determining whether Defendants are entitled to summary judgment on the Section 1983 claims.

## IV.   DISCUSSION

Defendants have moved for summary judgment with respect to all of Plaintiffs' Section 1983 claims against them, which include their claims (1) against Camden Police and Pennsauken

Police,[6] (2) against Chief Nettleton and Chief Thomson in their official capacities,[7] (3) against Camden and Pennsauken, and (4) against Chief Thomson and Chief Nettleton in their individual capacities. The Court addresses the claims against each pair of defendants in turn.

At the outset, the Court notes that liability pursuant to Section 1983 against municipalities and supervisors must involve an underlying constitutional violation. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989) (stating where a municipality is charged with liability for constitutional violation pursuant to Section 1983, liability can attach to the municipality only "where the municipality itself causes the constitutional violation"); *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (explaining a supervisor can be liable if he or she established and maintained a policy, practice, or custom which directly caused a constitutional harm or participated in violating plaintiff's rights, directed others to violate them, or had knowledge of and

---

[6] In the Third Circuit, it is well established that courts "treat [a] municipality and its police department as a single entity for purposes of section 1983 liability." *Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582, 590 (D.N.J. 2013) (alteration in original) (quoting *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997)). "In Section 1983 actions, police departments cannot be sued in conjunction with municipalities, because the police department is merely an administrative arm of the local municipality, and is not a separate judicial entity." *Padilla v. Twp. of Cherry Hill*, 110 F. App'x 272, 278 (3d Cir. 2004) (quoting *DeBellis v. Kulp*, 166 F. Supp. 2d 255, 264 (E.D. Pa. 2001)); *see also Benjamin*, 937 F. Supp. 2d at 590-91 (granting dismissal with prejudice of all Section 1983 claims against defendant police department because it was not a proper party to suit); *Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 430 (D.N.J. 2011) (granting summary judgment in favor of police department on same basis). Here, Plaintiffs have brought the instant action against Defendants Camden Police and Pennsauken Police. Because police departments are not separate entities from their municipalities, summary judgment is entered in favor of Camden Police and Pennsauken Police.

[7] "[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (internal citation omitted). Accordingly, where claims against an officer in his official capacity are duplicative of claims against the municipality, those claims are properly dismissed as redundant. *See, e.g., Baez v. Lancaster Cnty.*, 487 F. App'x 30, 32 (3d Cir. 2012) (summary judgment granted in favor of officer in his official capacity because that claim was duplicative of suit against county); *Ctvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) (affirming district court's dismissal of claims against officers in their official capacities because lawsuit against public officers in official capacities is functionally a suit against public entity that employs them); *Janowski v. City of N. Wildwood*, 259 F. Supp. 3d 113, 132 (D.N.J. 2017) (dismissing supervisory liability claims against chief of police in his official capacity because claims were duplicative of liability claims against municipality). Here, the Section 1983 claims against Chief Thomson and Chief Nettleton in their official capacities are entirely duplicative of the municipal liability claims against Camden and Pennsauken. On this basis, summary judgment is entered in favor of Chief Thomson and Chief Nettleton in their official capacities.

acquiesced in their subordinates' violations). Accordingly, the Court first addresses whether Plaintiffs have pointed to a constitutional violation.

Section 1983 provides a cause of action for an individual whose constitutional or federal rights are violated by those acting under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not on its face create substantive rights. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Rather, "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Id.* To establish a claim under Section 1983, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Mosca v. Cole*, 217 F. App'x 158, 163 (3d Cir. 2007) (alteration in original) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("By the plain terms of [Section] 1983, two—and only two—allegations are required in order to state a cause of action under that statute. First, the plaintiff must allege that some person has deprived him [or her] of a federal right. Second, he must allege that the person who has deprived him [or her] of that right acted under color of state or territorial law.").

In light of the record evidence, and resolving all justifiable inferences in favor of Plaintiffs, it appears that Plaintiffs allege that Defendants should have undertaken more extensive efforts to locate Thomas which would have prevented his death. Indeed, in her deposition, Randle submits that Defendants should have searched the water nearby where Thomas was last seen and knocked

on the doors of his family to locate him.[8] Stated differently, Plaintiffs contend that Defendants should have launched a more extensive search for Thomas and their failure to do so gives rise to a constitutional violation under the state-created danger theory.[9]

"The Due Process Clause of the Fourteenth Amendment does not impose an affirmative right to governmental aid, 'even where such aid may be necessary to secure, life, liberty, or property interest of which the government itself may not deprive the individual.'" *Hottenstein v. City of Sea Isle City*, 977 F. Supp. 2d 353, 363 (D.N.J. 2013) (quoting *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989)). Importantly, "there is no federal constitutional right to rescue services, competent or otherwise." *Id.* (quoting *Brown v. Commonwealth of Pa. Dep't of Health*, 318 F.3d 473, 478 (3d Cir. 2003)). However, one exception to the "non-liability rule" is when a state-created danger is involved. *Id.* Under the state-created danger theory, "a constitutional violation 'can occur when state authority is affirmatively employed in a manner that injures a citizen or renders him [or her] 'more vulnerable to injury' than he would have otherwise been." *Id.* at 363 (quoting *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)). "[A] plaintiff can allege a substantive due process violation under [Section] 1983 by showing that the harm suffered at the hands of third parties was a direct result of state action." *Callaway v. Small*, 576 F. Supp. 3d 232, 244 (D.N.J. 2021) (quoting *Bilbili v. Klein*, 249 F. App'x 284, 287 (3d Cir. 2007)). To hold a state actor liable under the state-created danger theory, a plaintiff must show:

---

[8] Although these efforts may seem completely justifiable to a mother searching for her son, this Court must consider these efforts in the context of a constitutional violation by Defendants.

[9] While Randle does not explicitly state that Defendants' failure to launch an extensive search gives rise to a constitutional violation under the state-created danger theory, the Court gleans this as the only viable constitutional violation that could be alleged from Randle's testimony. As previously articulated, demonstrating an underlying constitutional violation is required under the law to attach liability to a municipality or supervisor under Section 1983.

> 1) the harm ultimately caused was foreseeable and fairly direct;
>
> 2) the state actor acted with a degree of culpability that shocks the conscience;
>
> 3) the relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a member of the public in general; and
>
> 4) a state actor affirmatively used his or her authority in a way that create[s] a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Morrow v. Balaski*, 719 F.3d 160, 177 (3d Cir. 2013) (quoting *Bright*, 443 F.3d at 281). "[U]nder the fourth element . . . '[l]iability under the state-created danger theory is predicated upon the states' affirmative acts which work to the plaintiff['s] detriments in terms of exposure to danger.'" *Callaway*, 576 F. Supp. 3d at 245 (second alteration in original) (quoting *Bright*, 443 F.3d at 281).

In this case, even if Plaintiffs presented evidence in support of the first three elements of the state-created danger test, the claim that Defendants created a danger by failing to conduct a more extensive search for Thomas nonetheless fails because supporting such a claim would require "affirmative acts" on their part. *Bright*, 443 F.3d at 282 ("[W]e have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised."). Plaintiffs do not present any evidence that Defendants affirmatively exercised their authority to harm Thomas. Furthermore, the undisputed facts before the Court are straight forward. Thomas failed to yield to a stop sign, engaged in a car chase with police before crashing his vehicle, and ran into a wooded area near a river embankment. Police officers searched for Thomas in the area where he was last seen, were not successful in finding him, and determined he had eluded arrest. While the Court affords Plaintiffs all justifiable inferences from the evidence in their favor, Plaintiffs fail to present a genuine issue as to any material fact sufficient to establish that the police officers affirmatively harmed Thomas. In fact, the evidence before the Court

suggests that it was not the police officers but rather Thomas who created a harm by fleeing from police in the first instance and into a wooded area near a river embankment. Moreover, Thomas' undisputed cause of death is methamphetamine and buprenorphine intoxication. Accordingly, Plaintiffs' state-created danger claim fails. Absent any record evidence that Defendants acted to affirmatively harm Thomas, the Court finds Defendants are entitled to summary judgment on this claim.

In the absence of a constitutional violation, Plaintiffs' claims under Section 1983 for failure to supervise and/or train against Camden and Pennsauken cannot survive summary judgment. For liability to attach, the identified deficiency in the municipality's training program must be closely related to an underlying constitutional violation. *See Adams v. City of Atlantic City*, 294 F. Supp. 3d 283, 304 (D.N.J. 2018) ("for liability to attach [to a city for failure to train or supervise], the identified deficiency in a city's training program must be closely related to the plaintiff's injury"); *Callaway*, 576 F. Supp. 3d at 248 (granting dismissal of municipal liability claim under Section 1983 because plaintiff failed to state underlying constitutional violation).

Likewise, summary judgment in favor of Chief Thomson and Chief Nettleton in their individual capacities is warranted because a plaintiff can prevail on a supervisory liability claim only if he or she can establish a causal link between the allegedly deficient supervision and the underlying constitutional violation. *See Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989) (discussing that in the context of the "policy or practice" theory of supervisory liability, under which a supervisor can be held liable for establishing and maintaining a policy, practice, or custom which directly caused the constitutional harm, plaintiff must prove that the constitutional injury resulted from failure to implement the supervisory practice or procedure); *Santiago*, 629 F.3d at 130 (explaining that in the context of the "participating or directing" theory of liability, where a

12

supervisor can be liable if he or she participated in violating plaintiff's rights or directed others to violate them, plaintiff must establish "a causal connection between the supervisor's direction and that violation, or, in other words, proximate causation"). Thus, in the absence of a constitutional violation, no such causal link can be established.

**CONCLUSION**

For all of the reasons set forth above, the Defendants' Motions for Summary Judgment are granted in their entirety. An accompanying Order shall issue.

Dated: September 8, 2023

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE